IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

J. KIRBY VIEIRA,
   Plaintiff,

   v.

CITIGROUP, INC., et al.,
   Defendants.

CIVIL ACTION FILE
NO. 1:12-CV-1636-TWT

ORDER

This is an action for wrongful foreclosure. It is before the Court on Defendants CitiMortgage, Inc., CitiGroup, Inc., and Mortgage Electronic Registration Systems, Inc.'s Motion for Summary Judgment [Doc. 22] and Plaintiff J. Kirby Vieira's Cross Motion for Summary Judgment [Doc. 26]. For the reasons set forth below, the Court GRANTS Defendants CitiMortgage, Inc., Citigroup, Inc., and Mortgage Electronic Registration Systems, Inc.'s Motion for Summary Judgment [Doc. 22] and DENIES Plaintiff J. Kirby Vieira's Cross Motion for Summary Judgment [Doc. 26].

I. Background

This dispute surrounds property located at 3623 Cochise Dr. NW, Cobb County, Atlanta, Georgia 30339 (the "Property"). The Plaintiff purchased the Property on April 28, 2006, after obtaining a mortgage from Primary Capital Advisors

LC. At closing, the Plaintiff executed a promissory note in the amount of $1,473,500 (the "Note"). At the same time, the Plaintiff executed and delivered a security deed (the "Security Deed") to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Primary Capital. (See Statement of Undisputed Material Facts in Supp. of Defs.' Mot. for Summ. J. ¶¶ 1-3).[1] Primary Capital thereafter indorsed the Note to Defendant CitiMortgage, Inc. ("CMI"). On July 21, 2011, MERS assigned its interest in the Property to CMI. CMI recorded the assignment in the Land Records of the Superior Court of Cobb County, Georgia. (See id. ¶¶ 5-7; Darrough Dec. ¶ 7). On March 6, 2012, CMI completed a non-judicial foreclosure of the Property, having sent the notice of foreclosure to the Plaintiff in January 2012. (See id. ¶ 8; Compl. ¶ 68). The Defendants state that the Plaintiff was $1,503,514.14 in arrears on his loan when the foreclosure sale was completed. (See Darrough Dec. ¶¶ 9-10).

The Plaintiff filed a complaint on April 9, 2012, against CitiGroup, Inc. ("CGI"), CMI, MERS, Pendergast and Associates, P.C. ("Pendergast"), and

---

[1]These facts are taken from the parties' respective statements of material fact. The Plaintiff's Rebuttal to Defendants' Statement of Undisputed Material Facts does not create questions of material fact with respect to the Defendants' assertions of fact regarding the closing transaction. (Compare Statement of Undisputed Material Facts in Supp. of Defs.' Mot. for Summ. J. ¶¶ 1-3, 5-8 with Rebuttal to Statement of Undisputed Material Facts in Supp. of Defs.' Mot. for Summ. J. ¶¶ 1-3, 5-8).

Worthmoore Realty, LLC, in Cobb County Superior Court.[2] The complaint was removed to this Court on May 9, 2012. [Doc. 1]. Pendergast filed a motion to dismiss on May 16, 2012. On December 12, 2012, the Court dismissed Pendergast and Worthmoore Realty as fraudulently joined defendants. [Doc. 39].

The Plaintiff seeks the following relief: (1) declaratory judgments with respect to the foreclosure; (2) injunctive relief with respect to the foreclosure; (3) a cancellation of the assignment from MERS to CMI; (4) a claim for slander of title; (5) an action to quiet title; (6) a claim for wrongful attempted foreclosure; (7) a claim for wrongful foreclosure; and (8) a claim for negligence. (Compl. ¶¶ 81-129).[3] On September 26, 2012, the Defendants filed a motion for summary judgment, and on October 17, 2012, the Plaintiff filed a cross motion for summary judgment. These motions are the subject of this Order.

## II. Motion for Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists

---

[2] The Plaintiff's initial complaint was amended with supplements to 28 paragraphs in the initial complaint. [Doc. 14]. In this Order, citations to the complaint refer to the complaint as amended.

[3] The amendments to the complaint state that the sixth cause of action is for wrongful foreclosure while the initial complaint stated that the sixth cause of action was for wrongful attempted foreclosure. (See Compl. ¶¶ 112-121).

and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. Discussion

### A. The Defendants' Motion for Summary Judgment

Defendants CGI, CMI, and MERS collectively move for summary judgment on all of the Plaintiff's claims. The Defendants argue that all the claims must fail because CMI held and owned the Note at all relevant times and because MERS properly assigned the Security Deed to CMI. The Defendants contend the Plaintiff cannot claim wrongful foreclosure because the notice of foreclosure properly identified the secured creditor, CMI, and because Pendergast, the law firm representing the secured creditor, had the authority to deliver the notice. The Defendants also argue the claims for wrongful attempted foreclosure and slander of title should fail because the Defendants did not publish false statements concerning the loan. The Defendants next

contend that the Plaintiff's negligence claim cannot survive because the duty owed to the Plaintiff was purely contractual and because the Defendants nevertheless did not breach any duty. Finally, the Defendants state that the Plaintiff's claims for declaratory judgments and injunctive relief must fail because these claims rest on the allegations underlying the Plaintiff's other claims.

The Plaintiff disputes all of the Defendants' contentions and generally argues that the assignment from MERS to CMI was invalid and that CMI never properly held the Note.[4] For organizational clarity, the Court will review the parties' arguments on a claim by claim basis.

### 1. The Plaintiff's Claim for Wrongful Foreclosure

"[A] plaintiff asserting a claim of wrongful foreclosure [must] establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." Brown v. Federal Nat'l Mort. Ass'n, No. 10-CV-03289, 2011 U.S. Dist. LEXIS 31478, at *16 (N.D. Ga. Feb. 28, 2011) (quoting Gregorakos v. Wells Fargo Nat'l Ass'n, 285 Ga. App. 744, 747-48 (2007)). The Plaintiff generally argues the foreclosure was

---

[4] The Plaintiff has argued that the Security Deed violates the Statute of Frauds. (See Pl.'s Br. in Supp. of Pl.'s Cross Mot. for Summ. J., at 19). However, the Security Deed satisfies the Statute of Frauds because it is in writing and signed by the Plaintiff, who is the "party to be charged." See O.C.G.A. § 13-5-30; (Defs.' Mot. for Summ. J., Ex. 2).

wrongful: (1) because the assignment from MERS to CMI was unlawful; (2) because the notice of foreclosure was deficient; (3) because the foreclosure sale unlawfully "chilled the bidding"; (4) because the Note was not properly indorsed or presented and contained an impermissible allonge; and (5) because the Security Deed granted title to MERS forever therefore precluding another party from holding the Security Deed. (Pl.'s Br. in Supp. of Pl.'s Cross Mot. for Summ. J., generally).[5] These arguments are incapable of defeating the Defendants' motion for summary judgment with respect to the Plaintiff's claim for wrongful foreclosure.

---

[5] The Plaintiff also argues that the Defendants were required to record a PT-61 form upon the transfer of the Note or the Security Deed. However, O.C.G.A. § 48-6-2 states that security deeds and other instruments in writing to secure debt are exempt from the PT-61 requirement. See O.C.G.A. § 48-6-2. Indeed, the document the Plaintiff cites to support his argument specifically states that security deeds are exempt from the PT-61 requirement. (See Pl.'s Br. in Opp. to Defs.' Mot. for Summ. J., Ex. 4).

a. <u>The Assignment From MERS to CitiMortgage</u>[6]

The Plaintiff argues that the assignment of the Security Deed from MERS to CMI was fraudulent. However, the documents the Plaintiff executed as well as district precedent indicate that the assignment from MERS to CMI was proper.[7] The language in the Security Deed specifically authorized the assignment from MERS to CMI. The deed states:

> Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with the power of sale, the [Property]. ... Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to the right to foreclose and sell the Property.

(Defs.' Mot. for Summ. J., Ex. 2, at 3). The Security Deed unequivocally permits MERS to assign its interest in the Property. See id. ("to the successors and *assigns* of MERS") (emphasis supplied); Gordon v. South Cent. Farm Credit, ACA, 213 Ga.

---

[6] The Court will repeat the conclusion with respect to the assignment laid out in the December 12, 2012 Order. See [Doc. 39].

[7] Several courts have held that plaintiffs in this situation do not have standing to challenge the assignment because they were a third party to the assignment. See, e.g., Woodberry v. Bank of America, N.A., 1:11-cv-3637-TWT, 2012 U.S. Dist. LEXIS 4197, at *5 (N.D. Ga. Jan. 12, 2012). Because the Court concludes that the assignment at issue was valid, it need not determine whether the Plaintiff here has standing to challenge the assignment.

App. 816, 817 (1994) ("[I]t is clear that a security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies.") (quoting Druid Assoc. v. Nat'l Income Realty Trust, 210 Ga. App. 684, 685 (1993)). There is nothing in the Security Deed or the other transaction documents to suggest that the assignment from MERS to CMI was invalid or even impermissible.

In Crutcher v. CitiMortgage, Inc., No. 1:12-cv-00455-JOF, 2012 U.S. Dist. LEXIS 177136 (N.D. Ga. Sep. 20, 2012), the court concluded that a similar assignment from MERS to CMI was valid. The court noted that the security deed at issue stated that "MERS is grantee and the nominee for the Lender and Lender's successors and assigns." Id. at *16 (internal quotation marks omitted). Likewise, the deed stated that "MERS has the power of sale and the right to exercise any or all of Lender's and Lender's successors and assigns' interests, including, but not limited to, the right to foreclose and sell the Property." Id. at *16-17 (internal quotation marks omitted). This language is nearly identical to the language in the Security Deed here. (See Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 3). Accordingly, the Court, like the court in Crutcher, concludes the assignment from MERS to CMI is valid.

This holding is in line with numerous other cases addressing the Plaintiff's arguments with respect to assignments from MERS. See, e.g., Woodberry v. Bank of America, N.A., No. 1:11-cv-3637, 2012 WL 113658 (N.D. Ga. Jan. 12, 2012);

LaCosta v. McCalla Raymer, LLC, No. 1:10-cv-1171, 2011 WL 166902 (N.D. Ga. Jan. 18, 2011); Nicholson v. OneWest Bank, No. 1:10-cv-0795, 2010 WL 2732325 (N.D. Ga. Apr. 20, 2010) (report and recommendation). Accordingly, summary judgment should be granted with respect to the Plaintiff's third cause of action, which seeks a cancellation of the allegedly fraudulent assignment.

### b. CMI's Notice of Foreclosure

The Plaintiff claims that CMI's notice of foreclosure did not comply with O.C.G.A. § 44-14-162.2. The statute lays out the requirements for a notice of foreclosure:

> Notice of the initiation of proceedings to exercise a power of sale in a mortgage, security deed, or other lien contract shall be given to the debtor by the secured creditor no later than 30 days before the date of the proposed foreclosure. Such notice shall be in writing, shall include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor, and shall be sent by registered or certified mail or statutory overnight delivery, return receipt requested, to the property address or to such other address as the debtor may designate by written notice to the secured creditor. The notice required by this Code section shall be deemed given on the official postmark day or day on which it is received for delivery by a commercial delivery firm. Nothing in this subsection shall be construed to require a secured creditor to negotiate, amend, or modify the terms of a mortgage instrument.

O.C.G.A. § 44-14-162.2(a). The Plaintiff argues that the notice was deficient because it failed to properly identify the secured creditor and because it was sent by Pendergast, the law firm representing CMI in the foreclosure. The Plaintiff contends

that Reese v. Provident Funding Associates, LLP, 317 Ga. App. 353 (2012) and Stubbs v. Bank of America, 844 F. Supp. 2d 1267 (N.D. Ga. 2012) indicate the notice was deficient.

In Reese, the plaintiff argued that a notice of foreclosure was deficient because it did not identify the secured creditor. The Georgia Court of Appeals interpreted O.C.G.A. § 44-14-162.2 to "require that the notice properly identify the secured creditor and reflect that the notice is being sent by the secured creditor or by an entity with authority on behalf of the secured creditor." Reese, 317 Ga. App. at 355. The court reversed summary judgment for the defendants because the notice had failed to properly identify the secured creditor and "sending a foreclosure notice that misidentifies the secured creditor violates the spirit and intent of O.C.G.A. § 44-14-162.2." Id. at 358-59 (citing Stubbs, 844 F.3d at 1272) (internal alterations omitted).

The opinion in Stubbs reached largely the same conclusion. The Stubbs court stated that, "[w]hile it may be of no consequence who actually sends the notice, and that task may properly be delegated to a servicing agent (or, as is often the case, an attorney), [the statutory scheme] make[s] clear that the identity of the secured creditor conducting the sale is a material element of that notice." Stubbs, 844 F. Supp. 2d at 1271. The court concluded that the notice was improper because the bank identified

as the secured creditor in the notice was not in fact the secured creditor at the time the notice was sent. Id. at 1272.

Neither of these cases compels the Court to hold that the notice of foreclosure here was deficient. The Plaintiff contends that the notice was sent by the law firm representing CMI in the foreclosure thus rendering the notice deficient. But the court in Stubbs specifically noted that the act of sending the notice can be and frequently is delegated to an attorney. See Stubbs, 844 F. Supp. 2d at 1271 ("that task may properly be delegated to a servicing agent (or, as is often the case, an attorney)"). The Plaintiff next appears to contend that the notice improperly identified the secured creditor because CMI was not the secured creditor when the notice was sent. (See Pl.'s Br. in Opp. to Defs.' Mot. for Summ. J., 10-16). But MERS assigned its interest as the secured creditor to CMI in July 2011, and the notice of foreclosure was received in January 2012. (See Compl. ¶ 68). Because the Court has determined the assignment from MERS to CMI was proper, there is nothing to indicate that CMI was not the secured creditor when the notice of foreclosure was sent in January 2012. Accordingly, the Plaintiff has not shown that the notice of foreclosure was deficient.

    c.  The Plaintiff's "Chilling the Bidding" Theory

The Plaintiff argues that the Security Deed contains a duty which "requires both parties to a contract to perform their promises and provide such cooperation as is

required for the other party's performance," and that CMI violated this duty in conducting the foreclosure sale. (Pl.'s Br. in Supp. of Pl.'s Cross Mot. for Summ. J., at 8 (citing Ihesiaba v. Pelletier, 214 Ga. App. 721, 724 (1994))). The Plaintiff alleges that, with respect to the foreclosure sale, "[t]he ad that was run, was of the nature, that it chilled the bidding on the property, leaving Citi, if not the only bidder, the highest bidder... [and] 'chilling the bidding is a jury issue.'" (Id. at 8-9 (citing Giordano v. Stubbs, 228 Ga. 75, 79 (1971))). The Defendants note that the Plaintiff is asserting the "chilling the bidding" argument for the first time at the summary judgment stage and further note that the Plaintiff has provided no evidence to support this claim aside from the conclusory statement that "[t]he bid was for around half what the property should have sold for." (See Pl.'s Br. in Supp. of Pl.'s Cross Mot. for Summ. J., at 9).

Even assuming that the Plaintiff's "chilling of bidding" theory is properly argued, the evidence he presents does not meet the standard listed in Giordano, the case on which he relies. In Giordano, the court stated that:

> [i]nadequacy of price paid upon the sale of property under power will not of itself and standing alone be sufficient reason for setting aside the sale. It is only when the price realized is grossly inadequate and the sale is accompanied by either fraud, mistake, misapprehension, surprise or other circumstances ... that such a sale may be set aside by a court of equity.

Giordano, 228 Ga. at 79.  Here, the Plaintiff's only evidence of a grossly inadequate price is the conclusory statement in his brief that "[t]he bid was for around half what the property should have sold for."  (Pl.'s Br. in Supp. of Pl.'s Cross Mot. for Summ. J., at 9).  The Plaintiff has similarly presented no evidence of the requisite "fraud, mistake, misapprehension, surprise, or other circumstances."[8]  This is insufficient to carry his burden at the summary judgment stage.

### d. The Promissory Note

Next, the Plaintiff argues that the indorsement on the Note is illegitimate and that CMI cannot be the holder of the Note because there is no recorded assignment of the Note.  (See Pl.'s Br. in Supp. of Pl.'s Cross Mot. for Summ. J., at 6, 14).  The Plaintiff further alleges "there is nothing showing that the original Promissory Note

---

[8] The Plaintiff's brief includes allegations of fraud with respect to the mortgage documents.  For example, the Plaintiff contends that "[t]he documents defendants are using have been disputed, been proven to be forgeries, and there must be more than an employee's Declaration [– the Darrough Declaration – ] that all the documents are on file and valid to make a document authentic."  (Pl.'s Br. in Supp. of Pl.'s Cross Mot. for Summ. J., at 14).  However, the testimony in the declaration is based on Darrough's personal knowledge of CMI's business records.  (Darrough Dec. ¶¶ 1-4). Further, the Darrough Declaration satisfies Federal Rule of Evidence 803(6) because the records discussed were kept by Darrough in the course of her regular business activities. (See Fed. R. Evid. 803(6); Darrough Dec. ¶¶ 2-4).  Accordingly, each document attached to the declaration is properly authenticated as a business record pursuant to that rule.  In any event, the Plaintiff's conclusory allegations of forgery and falsification are insufficient to show that the sale price was grossly inadequate and the result of fraud.

had an endorsement on it, or that the alleged allonge was never attached to the Note." (Pl.'s Br. in Supp. of Pl.'s Cross Mot. for Summ. J., at 6). The Plaintiff offers no evidence in support of these assertions. The Defendants, however, have produced a declaration from a Business Operations Analyst at CMI responsible for managing loans owned or serviced by CMI, including the Plaintiff's loan. (See Darrough Dec. ¶ 2). Attached to the declaration is a copy of the Note which shows an indorsement from Primary Capital Advisors LC – the original lender – to CMI. (See id. at ¶¶ 5-6, Ex. A). The Plaintiff's conclusory statements do not undermine the Defendants' properly authenticated evidence. Additionally, the Plaintiff's argument that the negotiated Note was not properly recorded fails because, in Georgia, promissory notes and other instruments payable to an identified person are negotiated pursuant to O.C.G.A. § 11-3-201, which does not require a negotiated note to be recorded. See O.C.G.A. § 11-3-201(b) (requiring transfer of possession and indorsement by holder to complete negotiation). Further, the allonge was produced along with the Note in the declaration. (See id. at ¶¶ 5-6, Ex. A).[9] Accordingly, the Plaintiff's arguments are insufficient to carry his burden with respect to his claim for wrongful foreclosure at the summary judgment stage.

---

[9] The Plaintiff's objections to the allonge seem to address its validity. However, the use of allonges with negotiable instruments is permitted under Georgia law. See O.C.G.A. § 11-3-204(a).

e. <u>MERS as Holder of the Security Deed</u>

Lastly, the Plaintiff rehashes the "splitting the note" theory which has been thoroughly rejected by Georgia courts. The Plaintiff states that:

> The fact remains that Citi and MERS breached the Security Deed when the Note was allegedly endorsed to Citi without the Security Deed that MERS held... Having MERS the holder of the Security Deed "forever," ... when MERS does not own and hold the Note, is a violation of that Security Deed.

(Pl.'s Br. in Supp. of Pl.'s Cross Mot. for Summ. J., at 19-20). The Plaintiff has not cited a case indicating this arrangement violates Georgia law, and a series of Georgia cases rejects the contention that it does. <u>See</u>, <u>e.g.</u>, <u>LaCosta v. McCalla Raymer, LLC</u>, No. 1:10-cv-1171-RWS, 2011 U.S. Dist. LEXIS 5168, at *5 (N.D. Ga. Jan. 18, 2011) ("Plaintiff has failed to draw the Court's attention to any Georgia statute or decision interpreting Georgia law that precludes the holder of the security deed from proceeding with a foreclosure sale simply because it does not also possess the promissory note."); <u>Tavarez v. CitiMortgage, Inc.</u>, No. 1:11-cv-00485, 2011 U.S. Dist. LEXIS 94906, at *16 (N.D. Ga. Aug. 16, 2011) ("there is also no support in Georgia law for the theory that if a security deed and note are "split," the mortgage becomes a nullity.").

The Plaintiff's varied arguments with respect to wrongful foreclosure are insufficient to withstand summary judgment. The Plaintiff has not shown issues of

material fact with respect to his arguments that the assignment was fraudulent, that the Note was improper, that the notice of foreclosure was deficient, that the bidding on the sale was chilled, or that the Note was impermissibly held. Accordingly, summary judgment should be granted to the Defendants with respect to the Plaintiff's claim for wrongful foreclosure.

### 2. The Plaintiff's Claim for Slander of Title

To establish a claim for slander of title, a plaintiff must show: (1) the publishing of slanderous words; (2) that such words were false; (3) that the plaintiff sustained special damages; and (4) that the plaintiff possessed an estate in the property slandered. Joseph v. Federal Home Loan Mortg. Corp., No. 1:12-CV-01022-RWS, 2012 U.S. Dist. LEXIS 159355, at *20 (N.D. Ga. Nov. 5, 2012) (citing Latson v. Boaz, 278 Ga. 113 (2004)); see also O.C.G.A. § 51-9-11. The Defendants contend that they did not publish false words because CMI was the holder of the Note, because CMI properly recorded the valid assignment of the Security Deed, and because CMI properly noticed the foreclosure sale. (See Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 21). The Plaintiff counters that the assignment of the Security Deed from MERS to CMI breached the Security Deed and resulted in published slander. However, the assignment from MERS to CMI was valid and did not breach the Security Deed. The Plaintiff offers no further contentions to support his slander of

title claim aside from conclusory allegations that the Defendants falsified the documents produced to the Court. These allegations are insufficient to carry the Plaintiff's burden at the summary judgment stage. Accordingly, summary judgment should be granted for the Defendants with respect to the Plaintiff's claim for slander of title.

### 3. The Plaintiff's Claim for Wrongful Attempted Foreclosure

To show wrongful attempted foreclosure, the Plaintiff must establish "a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition, and that damages were sustained as a direct result of this publication." Aetna Finance Co. v. Culpepper, 171 Ga. App. 315, 319 (1984). As discussed above, there is no indication that any Defendant published any false information because the assignment from MERS to CMI was valid. Further, there is no indication that the Plaintiff sustained an injury as a result of any publication and the Plaintiff has provided no evidence in support of such an injury. Accordingly, summary judgment should be granted with respect to the wrongful attempted foreclosure claim.

### 4. The Plaintiff's Claim to Quiet Title

The Plaintiff alleges that the fraudulent assignment from MERS to CMI is a cloud upon the Plaintiff's title to the Property. (Am. Compl. ¶ 108). However, the

assignment from MERS to CMI was not fraudulent. Further, under Georgia law, a petition to quiet title to land must be filed with a plat survey of the land. O.C.G.A. § 23-3-62(c). Here, the complaint did not include a plat survey of the land and that fact alone is sufficient to dismiss the Plaintiff's claim to quiet title. See Joseph v. CitiMortgage, No. 1:11-cv-2768-TWT, 2011 U.S. Dist. LEXIS 124804, at *6 (N.D. Ga. Oct. 27, 2011) (dismissing the plaintiff's claim to quiet title because the complaint was unverified and did not include a plat survey of the land in question). In any event, the Plaintiff has not provided sufficient evidence to withstand summary judgment with respect to his claim to quiet title.

### 5. The Plaintiff's Claim for Negligence

To state a cause of action for negligence under Georgia law, a plaintiff must prove the following: (1) a legal duty to conform to a standard of conduct; (2) a breach of that duty; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage resulting from the alleged breach of duty. Dawkins v. Doe, 263 Ga. App. 737, 738 (2003). The complaint states that the "Defendants had a duty to act in a fair and reasonable manner when dealing with Plaintiff with respect to all issues related to the Note and the Security Deed." (Am. Compl. ¶ 123). However, under Georgia law, "[a] defendant's mere negligent performance of a contractual duty does not create a tort cause of action." Fielbon

Dev. Co. v. Colony Bank of Houston Cnty, 290 Ga. App. 847, 855 (2008). The Plaintiff's allegation identifies the Defendants' duty under the Note and Security Deed but does not identify an additional source for the duty allegedly owed to the Plaintiff.

Even assuming that the Plaintiff had identified a non-contractual duty owed to the Plaintiff by the Defendants, he has not shown that a duty was breached. The allegations in the complaint focus on the allegedly fraudulent assignment and the allegedly deficient notice of foreclosure. (See Am. Compl. ¶ 125). The Court has concluded that the assignment from MERS to CMI was valid and that the notice of foreclosure was compliant. The Plaintiff has not provided further argument or additional evidence with respect to his claim for negligence. Accordingly, summary judgment should be granted for the Defendants on the Plaintiff's negligence claim.

### 6. The Plaintiff's Remaining Claims

The complaint also includes causes of action seeking declaratory judgments, injunctive relief, and expenses of litigation. The Plaintiff seeks a declaration that CMI never held the Note and never had an interest in the Security Deed. (Compl. ¶ 82). The Court has determined that CMI properly held the Note and was properly assigned the Security Deed. The Plaintiff also seeks a declaration that CMI was not entitled to foreclose on the Property. (Compl. ¶¶ 83-84). The Court has, however, determined that CMI's foreclosure was not wrongful. Accordingly, the Plaintiff is not

entitled to the declaratory relief he seeks and summary judgment should be granted for the Defendants. Likewise, the Plaintiff seeks a temporary and permanent injunctive relief with respect to CMI's foreclosure activities. (Compl. ¶¶ 86-90). Because the Court has determined the foreclosure was not wrongful, the Defendants should be granted summary judgment with respect to the injunctive relief the Plaintiff seeks. Finally, the Plaintiff cannot recover expenses of litigation as he has not made any showing that the Defendants acted in bad faith, were stubbornly litigious, or caused the Plaintiff unnecessary trouble and expense. See O.C.G.A. § 13-6-11. Summary judgment should therefore be granted to the Defendants on all of the Plaintiff's claims.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS Defendants CitiMortgage, Inc., Citigroup, Inc., and Mortgage Electronic Registration Systems, Inc.'s Motion for Summary Judgment [Doc. 22] and DENIES Plaintiff J. Kirby Vieira's Cross Motion for Summary Judgment [Doc. 26].

SO ORDERED, this 23 day of January, 2013.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge